IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 90-4909

---

SHAWNYA JONES,

Plaintiff-Appellant,

versus

SOUTHERN PACIFIC RAILROAD,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

( May 27, 1992)

Before JOLLY and HIGGINBOTHAM, Circuit Judges, and WILLIAMS, District Judge.[*]

HIGGINBOTHAM, Circuit Judge:

Shawnya Jones appeals a jury verdict in favor of Southern Pacific Railroad in this diversity action. She argues that the district court erred in excluding evidence and in failing to provide her with a written copy of the jury instructions. We affirm.

I.

One evening in March of 1988, a train collided with a pick up truck at a railroad crossing in Mount Pleasant, Texas. The driver of the truck, Sammy Eason, was killed. Eason's girlfriend Shawnya

---

[*]Senior District Judge of the Northern District of California sitting by designation.

Jones was thrown free of the truck and suffered a concussion, bruises and contusions, and a broken toe.  Jones sued Southern Pacific Railroad for damages, alleging that it was negligent both in the maintenance of the railway crossing gate and in the conduct of the train.  She contended that the crossing gate was not down when they approached the tracks and that the train was going too fast, failed to brake properly, and neglected to blow its whistle.  She sought damages for her injuries and for mental and physical pain and suffering.

At trial, Southern Pacific introduced testimony of two witnesses indicating that the crossing gate was down when they arrived at the scene of the accident, and that its lights were blinking and its bells were ringing.  It also introduced the testimony of the train's engineer, Holiday H. Haley, that he was going 35 miles an hour at the time of the wreck--the speed limit on this stretch of track--and that he blew the train's whistle as he proceeded through the town.  He saw the pick up truck go around the crossing gate, and he immediately put on his brakes when he saw that the train was going to collide with the truck.  A signal maintainer employed by Southern Pacific testified that he checked the gate the morning after the accident and found it to be in good working condition.  He had also checked the gate eight days before and had found it in good working condition.  Jones herself conceded that she observed blinking lights and heard bells ringing as they approached the railroad crossing.  She testified, however, that the crossing gate was not down at the time of the accident and that

2

they did not go around it. She also said that she did not hear the train blow its whistle. Another witness also testified that the crossing gate did not come down until after the accident took place.

Jones sought to introduce evidence at trial that Haley had been ticketed in the past for speeding and improper use of brakes. Her counsel asked Haley whether he had ever been ticketed for these offenses, and he said no. As this line of questioning continued, defense counsel objected. The district court sustained the objection, found these questions irrelevant to the merits of the case, and instructed counsel to move on. Later, plaintiff's counsel made a formal request to introduce Haley's employment record and cross examine him about it, and the court denied this request, standing by its earlier ruling. The court thus excluded evidence in Haley's personnel file that indicated that he had been cited, although perhaps not formally ticketed, for various safety infractions in the course of his career, including speeding and failure to brake properly.

At the close of the evidence, the district court told the parties that it would have a charge conference in which it would review the jury instructions. The court explained the issues and contents of the instructions to be given and informed the parties that its intention was to follow the instructions presented by Jones, with a few modifications. Jones requested, but was denied, a written copy of the instructions. The parties delivered their closing arguments, and the court then instructed the jury on the

issues before them.  The jury returned a verdict in favor of Southern Pacific.  Jones appeals.

## II.

Jones argues that the district court erred in excluding evidence of Haley's prior safety infractions.  We disagree.  Rule 404(b) of the Federal Rules of Evidence says that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."  The reason for the rule is that such character evidence is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion.  Reyes v. Missouri Pacific Railroad Co., 589 F.2d 791, 793 & n.6 (5th Cir. 1979).  As the district court recognized, Haley's prior safety infractions had little to do with what actually happened on the day of the wreck.  Such evidence was not admissible to show that Haley was negligent in conducting the train.  See Moorhead v. Mitsubishi Aircraft Int'l, Inc., 828 F.2d 278, 287 (5th Cir. 1987) (pilot's training records not admissible to show that he was negligent in crashing plane); American Airlines, Inc. v. United States, 418 F.2d 180, 197 (5th Cir. 1969) ("[E]vidence of a similar act of negligence is not admissible to prove negligence in the performance of the same act later.").

Jones urges that the evidence was admissible under Rule 406 to show that Haley had a habit of operating trains negligently.  Habit evidence is superior to character evidence because the uniformity of one's response to habit is far greater than the consistency with

which one's conduct conforms to character. Reyes, 589 F.2d at 794. Evidence of habit is not lightly established, however. To offer evidence of a habit, a party must at least demonstrate a "regular practice of meeting a particular kind of situation with a specific type of conduct." Id. In Reyes, we held that four prior convictions for public intoxication spanning a three and one-half year period were of insufficient regularity to rise to the level of habit evidence. Haley was cited for nine violations in the course of a twenty-nine year career. These infractions were varied: speeding, failure to make a full service brake application after stopping, failure to properly identify himself on the radio, failure to display headlights, and the like. Several such incidents over the course of a long career are not much evidence that Haley was generally a careless engineer. They can hardly be characterized as a habit.

Alternatively, Jones contends that evidence of Haley's safety infractions was admissible to impeach his testimony that he had not been ticketed for speeding or improper braking. Litigants are of course entitled to introduce extrinsic evidence to contradict a witness' testimony on matters that are material to the merits of the case. See, e.g., United States v. Blake, 941 F.2d 334, 338-39 (5th Cir. 1991); Carson v. Polley, 689 F.2d 562, 574 (5th Cir. 1982). There is no right to impeach a witness with respect to collateral or irrelevant matters, however. United States v. Hawkins, 661 F.2d 436, 444 (5th Cir. 1981); Globe Life and Accident Insurance Co. v. Still, 376 F.2d 611, 614 (5th Cir. 1967). "Not

5

only may the interjection of extraneous issues confuse the jury, but if the error concerns events that have moral implications, the contradiction may prejudice a jury into finding against the witness' side." See J. Weinstein & M. Berger, Weinstein's Evidence § 607[05] (1991).

Of course, if the opposing party places a matter at issue on direct examination, fairness mandates that the other party can offer contradictory evidence even if the matter is collateral. See, e.g., Moorhead, 828 F.2d at 287 (evidence of pilot's low ratings in the past would be admissible to rebut evidence of good record as a pilot offered in his defense); Croce v. Bromley Corp., 623 F.2d 1084, 1092 & n.24 (5th Cir. 1980) (because defendants placed the reputation of the pilot at issue, plaintiffs were allowed to offer contradictory evidence on his prior record). But a party cannot delve into collateral matters on its own initiative and then claim a right to impeach that testimony with contradictory evidence. This would be "'a mere subterfuge to get before the jury evidence not otherwise admissible.'" Taylor v. National Railroad Passenger Corp., 920 F.2d 1372, 1376 (7th Cir. 1990) (quoting United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984)).

Haley's prior safety infractions, nearly all of which occurred several years before the accident took place, were collateral to the issues involved in this case. They were not admissible to show that Haley was negligent on the day of the accident, or that he had a habit of conducting trains negligently. On this record, they could not have been introduced into evidence for any purpose other

than contradiction.  See Taylor, 920 F.2d at 1375.[1]  Southern Pacific did not elicit testimony or introduce extrinsic evidence indicating that Haley had a good safety record as an engineer. Indeed, Jones sought to introduce Haley's safety infractions on direct examination, before Southern Pacific had put on any evidence at all regarding Haley.  Under these circumstances, Jones was not entitled to impeach Haley's testimony with evidence of his past safety infractions.  The district court properly excluded this evidence.

## III.

Jones also argues that the district court violated Federal Rule of Civil Procedure 51 by failing to give her a written copy of the jury instructions in advance so that she could prepare her closing argument and make objections.  This rule says that

> [a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.  The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.  The court, at its election, may instruct the jury before or after argument, or both.  No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

---

[1]Jones did not argue that Southern Pacific was negligent in allowing Haley to continue to serve as an engineer.  See In Re Air Crash in Bali, Indonesia, 684 F.2d 1301, 1315 (9th Cir. 1982) (finding pilot's training records admissible when plaintiff alleged negligent entrustment).

7

The purpose of this rule is to permit counsel to argue effectively on the evidence and to know in advance the guiding principles under which closing argument should be made.  Ebanks v. Southern Railroad Co., 640 F.2d 675 (5th Cir. 1981).  It does not require that the court inform the parties of the precise jury instructions in advance, nor that it provide counsel with an advance copy of the instructions.  See Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22-23 (3d Cir. 1984); Beimert v. Burlington Northern, Inc., 726 F.2d 412, 414 (8th Cir. 1984).  It is enough that counsel be apprised of the substance of the instructions so that they can make effective closing arguments and tender any objection.

There is ample evidence that Jones was adequately informed of the jury instructions before closing argument.  Counsel referred to the charge at length in closing and advised the jurors as to how they should consider the legal issues.  Jones argues that she was unaware that the court would tell the jury that Eason was contributorily negligent as a matter of law.  But the record reflects that the district court told counsel that it considered Eason's negligence beyond dispute, but that it would submit to the jury the issue of whether his negligence was the sole cause of the accident.  In any event, Jones has failed to show material prejudice from any error.  If it appears that a party suffered no harm from a technical violation of Rule 51, we will not reverse. Kestenbaum v. Falstaff Brewing Co., 575 F.2d 564, 574-75 (5th Cir. 1978); Siddiqui v. Leak, 880 F.2d 904, 911 (7th Cir. 1989).

AFFIRMED.