**Richard DIETZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–02–00771–CR.**

Court of Appeals of Texas,
San Antonio.

Oct. 22, 2003.

Rehearing Overruled Nov. 3, 2003.

John J. 'Bud' Ritenour, Jr., Attorney At Law, San Antonio, for Appellant.

Alan E. Battaglia, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Richard Dietz was convicted by a jury of assault. On appeal, he asserts that the trial court erred in precluding him from presenting a complete defense. Specifically, Richard contends that the trial court should have permitted him to question witnesses regarding Christine's habitual response to arguments. We sustain the point of error, reverse the trial court's judgment, and remand the cause to the trial court for a new trial.

### BACKGROUND

On November 25, 2001, Christine and Richard Dietz had a barbecue at their home. Both had been drinking. Around 2:30 a.m., Richard and Christine argued. The argument resulted in a physical altercation, and both Richard and Christine sustained injuries.

Christine testified that Richard began arguing with her and accusing her of "being with somebody." As Christine was attempting to call her mother on the phone, Richard hit her on the left side of her face around her eye. Richard then knocked Christine to the ground, pinned her to the floor, and kept hitting her. Because Richard was straddled on top of her, Christine could not move her legs. Christine bit Richard on his finger to get him off of her. After Richard got up and left the room, Christine ran to a neighbor's house, and the neighbor called the police. Christine's eye was swollen, and her face was bruised. Photographs depicting Christine's injury were admitted into evidence, together with her medical records.

The hospital diagnosed Christine's injury as a fractured eye socket.

On cross-examination, Christine denied being passed out at the kitchen table. She also denied being drunk, stating that she was aware of her surroundings. Christine did not remember who was the last person to leave the party. Christine denied that she had a drinking problem during her marriage to Richard; however, Christine admitted that Richard's mother suggested that she get counseling because Richard's mother thought Christine had a drinking problem. Christine admitted that Richard and she had a "rocky marriage," would often have verbal arguments, and occasionally would have physical altercations. Christine admitted that the physical altercations "particularly happened" when they were intoxicated. Christine stated that she did not remember telling her neighbor or Richard's mother that she did not remember what happened that night. Christine also admitted that in her statement taken two days after the events occurred, she stated that she did not remember "how the argument happened" or how she "got hit in the face."

Officer Todd Smith received a dispatch at 3:26 a.m. for an assault in progress. Richard explained to Officer Smith that he and Christine were having a dispute. Richard showed him that he had a bleeding bite mark on his hand. Christine told Officer Smith that they had an argument because Richard thought Christine was seeing someone else. Officer Smith noted that Christine had a bruised eye and some scrapes on her face. Christine told Officer Smith that she bit Richard's finger in self-defense. Based on the stories he was given, Officer Smith decided that Richard was the aggressor and arrested him.

Rebecca Jones, the last neighbor to leave the party, testified that Christine had been drinking a lot. When Jones left the party, Christine "was passed out at the kitchen table." Jones believed that Christine had consumed enough alcohol to make her pass out. After Jones returned home, Christine came to her door, crying and saying that Richard hit her. Jones called the police. Christine told Jones that she did not know what happened. Jones stated that it seemed out of character for Richard to be violent, and she did not know what provoked it.

Richard's mother, Bettie, testified that Richard called her and asked her to come to his house. When Bettie arrived, Christine told her that she did not know what was happening. Bettie did not see any bruises on Christine, but she noticed that Christine's wrists were red. Christine was holding an ice pack to her face. Bettie testified that she had seen Christine drink to excess and that Bettie believed that Christine had been drinking to excess that night. Bettie previously had suggested Christine get counseling for an alcohol problem.

Richard testified that he was drinking beer at the barbecue and that Christine was drinking beer and shots of tequila. When the last guest left the party, Christine was passed out on the table. Richard approached her to ask her "about her going to be with her boyfriend." When Christine finally opened her eyes, she started screaming. She bit Richard in the stomach and scratched his back. Richard went to call Christine's mother "like he always did," but Christine slapped the phone away. Christine hit and kicked Richard. Richard grabbed her wrists, and they fell to the ground. Richard was on top of Christine trying to keep her from kicking him in the groin again. Richard stated that he believed Christine was still a danger to him when she was on her back on the floor because she is stronger than he is. Christine was struggling, and Rich-

ard was trying to hold her because "she hits hard." Christine turned her head and started biting Richard's thumb. Richard "swung for wherever [his] finger was hurting ... and hit [Christine] in the eye." Richard hit Christine to get his finger out of her mouth. Richard got up, and Christine ran to a neighbor's house. Photographs depicting Richard's injuries, which were taken a few days after the altercation, were introduced into evidence.

Based on the foregoing testimony, the jury found Richard guilty of assault, rejecting Richard's self-defense theory.

## DISCUSSION

In his sole point of error, Richard contends that the trial court erred in precluding him from presenting a complete defense which violated his constitutional right to due process. Richard made an offer of proof through a bill of exception of the following testimony that he sought to have introduced.

Christine denied that her normal response to arguments was to get violent and throw things. Christine admitted that some of the time Richard's response would be to go into another room or leave the house. Christine also admitted that Richard routinely called her parents and his mother when Christine and Richard argued.

Bettie testified that when Richard and Christine argued, Christine was typically intoxicated. Richard routinely walked away from Christine and called Bettie.

Richard's friend, David Mann, testified that Richard and Christine had problems in their marriage. Mann attributed the problems to Christine's infidelity. When Richard and Christine fought, Christine was usually the aggressor, and she would always break things, "trash the house," and hit and scratch Richard. Richard would usually leave. Mann testified that

he had been present at the immediate aftermath of a fight and assisted in cleaning up glass that both Christine and Richard told him Christine broke.

Richard testified that the arguments between Christine and he became violent most of the time. Richard would routinely call Christine's parents because they were the only ones who could settle her down. Richard would also call his mother. Christine would act violently during their arguments, throwing things at Richard and hitting him. Richard would try to get away from Christine by going in another room or outside in his truck.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.* If the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained even when the trial judge gives the wrong reason for his decision. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

Richard contends the excluded evidence was admissible under rule 406 as evidence of a habit. The State responds that Richard failed to establish that the evidence rose to the level of a habit. The State further responds that the testimony of Bettie and Mann regarding which individual was the aggressor in the fights was based on what Richard told them and, therefore, was inadmissible hearsay.

 Most of Mann's testimony regarding Christine being the aggressor in the fights between Richard and Christine is based on statements made by Richard to Mann. "Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). Because the statements

made by Richard to Mann regarding Christine being the aggressor in the fights were hearsay, Mann's testimony was inadmissible, and the trial court did not err in excluding the testimony. *See* TEX.R. EVID. 802.

■ Bettie's testimony was also based on inadmissible hearsay. Bettie's testimony is based on the statements made by Richard to her when he called her after the fights. Bettie stated that after the fights Richard would call her and let her know what happened. Accordingly, Bettie's testimony was based on hearsay, and the trial court did not err in excluding the testimony.

■ Since the testimony of Mann and Bettie was properly excluded as hearsay, the only testimony to be considered in determining whether the evidence was admissible as evidence of a habit under rule 406 was the excluded testimony of Dietz and Christine. Texas Rule of Evidence 406 provides that evidence of a habit of a person, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove the conduct of the person on a particular occasion was in conformity with the habit. TEX.R. EVID. 406. In order for the excluded testimony of Richard and Christine to be admissible as evidence of habit, Richard was required to demonstrate "a regular practice of meeting a particular kind of situation with a specific kind of conduct." *Anderson v. State,* 15 S.W.3d 177, 183 (Tex.App.-Texarkana 2000, no pet.); *Bishop v. State,* 837 S.W.2d 431, 435 (Tex.App.-Beaumont 1992), *aff'd,* 869 S.W.2d 342 (Tex.Crim. App.1993) (quoting *Jones v. Southern Pac. R.R.,* 962 F.2d 447, 449 (5th Cir.1992)). We conclude that Richard met this burden. The evidence established that during their twelve year relationship, Christine would aggressively react during their arguments, while Richard regularly retreated and called his mother and Christine's parents.

We must now determine whether the exclusion of the evidence is of constitutional magnitude.

■ "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi,* 410 U.S. 284, 303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). "The Supreme Court has made clear that the erroneous exclusion of critical, corroborative evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." *DePetris v. Kuykendall,* 239 F.3d 1057, 1062 (9th Cir.2001).

In *Potier v. State,* 68 S.W.3d 657, 663–664 (Tex.Crim.App.2002), the Texas Court of Criminal Appeals cited *DePetris* as comporting with the standard set by the Supreme Court's decisions in evaluating whether the exclusion of evidence amounts to a constitutional violation. In *DePetris,* the defendant was asserting self-defense in response to a charge of murder. 239 F.3d at 1058. The trial court excluded the handwritten journal of the defendant's husband, the victim, which contained his "chilling account of his violent behavior toward his first wife and others." *Id.* at 1059. The court noted that the defendant's credibility and state of mind were the central issues in the case. *Id.* at 1059. The court further noted that "where a defendant's guilt hinges largely on the testimony of a prosecution's witness, the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution." *Id.* at 1062. The court then asserted that the success of the defendant's defense "depended almost entirely on the jury's believing her testimony about her state of mind at the time of the shooting." *Id.* The court reasoned that the exclusion of the journal "went to the heart of the defense" because it would have corroborated the defendant's testimony. *Id.*

■ In this case, Dietz sought to introduce evidence that would establish that Christine became violent during arguments and that he would attempt to get away from her. The investigating officer and Dietz both testified that Dietz had a bleeding bite mark on his finger. In evaluating whether the bite mark was the result of Christine's aggression or her defense of herself, evidence of Christine's past aggressive behavior was critical.

The State contends that the exclusion of the evidence did not prevent Richard from presenting his defense because he testified regarding his version of the events and other evidence was introduced to show that Christine did not recall the details of how the fight started, what had happened, or how she was hit on the night in question. Although this other evidence calls into question Christine's later ability to recount the details of the events that transpired, the success of Dietz's defense depended almost entirely on the jury's believing his testimony that Christine was the aggressor. Christine's habit of aggressive behavior goes to the heart of Dietz's defense because it would have corroborated Dietz's testimony. The habit evidence was critical, corroborative evidence. Because the exclusion of the habit evidence significantly undermined a fundamental element of Dietz's defense, we hold that the error was of constitutional dimension. Because we cannot determine beyond a reasonable doubt that the exclusion of the evidence did not contribute to Richard's conviction, the error is reversible. TEX.R.APP. P. 44.2(a).

### CONCLUSION

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

Dissenting Opinion by SANDEE BRYAN MARION, Justice.

SANDEE BRYAN MARION, Justice, dissenting.

I agree with the majority that the evidence Dietz sought to introduce about his and Christine's past physical altercations was "habit" evidence admissible under Texas Rule of Evidence 406. However, I do not believe the error in excluding the proffered testimony was of constitutional magnitude or resulted in reversible harm, therefore, I respectfully dissent.

The Court of Criminal Appeals has held that the exclusion of defensive evidence rises to the level of constitutional error if the evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State,* 68 S.W.3d 657, 665 (Tex.Crim.App.2002). Here, the exclusion of the evidence did not preclude Dietz from presenting his defense.

At trial, the jury heard Dietz's version of the events that led to Christine's injuries. Dietz testified both he and Christine had been drinking during a party hosted by the couple, but that only Christine was drunk. By the time the last person left the party, Christine was passed out on a kitchen table. Dietz said he tried to call his mother before he decided to talk to Christine about her seeing another man because he wanted to get someone over there before he got "in trouble." He said when he spoke to Christine, "When she finally opened her eyes, she came out screaming and bit me in the stomach and scratched me in the face." At this point, he tried to call Christine's mother, but Christine slapped the phone out of the wall. He said he grabbed her wrists and they fell to the ground. He was on top of her, trying to stop her from kicking him. He said he tried to get away from her, but could not because she continued to hit him. He said he hit his wife because she was biting his finger. After he hit her, she left

the house and he stayed in the house until the police arrived.

Other evidence, admitted at trial, tended to support Dietz's version of the incident. Rebecca Jones, the couple's neighbor, was the last to leave the party. She testified to Christine's drinking and she said Christine was passed out on the table when she left the party. Shortly after Jones returned to her own home, Christine rang her doorbell, crying and saying defendant had hit her. Jones stated that Christine said she did not know what started the fight or what had happened. Jones said it was "out of character" for defendant to be violent. Dietz's mother said that when she arrived at the couple's home after the incident, Christine told her she did not know what happened. In Christine's statement to police, given two days after the incident, Christine said she did not remember how the fight started or how she got hit.

Although the erroneously excluded evidence was relevant, its exclusion did not prevent Dietz from presenting the substance of his defense. Therefore, the error was not of constitutional dimension. "Exclusions of evidence are unconstitutional only if they 'significantly undermine fundamental elements of the accused's defense.'" "That '[the defendant] was unable to present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.'" *Potier*, 68 S.W.3d at 666 (citations omitted); see also *Valle v. State*, 109 S.W.3d 500, 506–07 (Tex.Crim.App.2003) (holding same). Because Dietz's substantial rights have not been affected, I would affirm the trial court's judgment. See Tex.R. Evid. 103(a); Tex.R.App. P. 44.2(b); *Potier*, 68 S.W.3d at 666.