NO. 07-06-0380-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 24, 2007

_____


MILTON D. STEPHENSON, A/K/A MILTON STEPHENSON,
A/K/A MILTON DEE STEPHENSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 252ND DISTRICT COURT OF JEFFERSON COUNTY;

NO. 91144; HONORABLE LAYNE WALKER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

This case involves the admissibility of expert witness testimony in the field of

psychology pertaining to the reliability of eyewitness identification of a suspect from a

photographic lineup. Following a *Daubert-Kelly* hearing,[1] the trial court concluded that the proffered expert witness testimony did not meet the threshold requirements for admissibility and excluded the testimony. Finding that, under the circumstances of this case, the trial court erred by excluding such testimony, we reverse and remand this case for a new trial.

## Background

At approximately 9:45 p.m. on June 20, 2003, Maria Moreno was vacuuming her car at a car wash. All the doors to the car were open. Her husband had gone to get change, and her young son was in the back seat. While she was cleaning out the back seat area, she looked up and noticed a stranger sitting in the driver's seat. She pushed him and asked what he was doing. He responded by pointing a gun at her and demanding she get away. She removed her son from the car and the man quickly drove away, after which she called 911.

The responding officer secured the scene and obtained information on the stolen vehicle. The complainant advised the officer that the suspect had originally approached the scene on a bicycle which was then booked into evidence. She described the suspect as an eighteen year old black male with a small pointed nose.

---

[1]*See* Tex. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992).

Thirteen days later, on July 3, 2003, the detective assigned to the case presented a six-person simultaneous photographic lineup to the complainant. According to the detective, the photographs used in the lineup were selected by another detective. He did not make any suggestions to the complainant regarding the lineup. Four to five minutes after viewing the lineup, the complainant positively identified Appellant as the man who had stolen her car from the car wash at gunpoint. The complainant's eyewitness identification of Appellant was the only evidence which tied Appellant to this crime.

At a hearing on Appellant's motion to suppress the photographic lineup identification of Appellant, the complainant testified about the facts surrounding the robbery and her subsequent identification of Appellant from that photographic lineup. The investigating detective testified the complainant positively identified Appellant without any suggestion or pressure from him. At the suppression hearing, the trial court denied Appellant the opportunity to present testimony from Dr. Curtis E. Wills, a forensic psychologist, who had been proffered as an expert witness on the subject of (1) the reliability of eyewitness testimony in the context of simultaneous photographic lineup identifications and (2) "other elements" that create "false positives in photographic lineups." At the conclusion of the hearing, the trial court denied Appellant's motion to suppress both the photographic lineup and the in-court identification.

At trial, Appellant again proffered the testimony of Dr. Wills. In response to this proffer, the State requested a *Daubert-Kelly* hearing. During that hearing, Dr. Wills was

3

allowed to testify and supporting exhibits were received. At the conclusion of that hearing, the court announced that the testimony of Dr. Wills would be excluded from the jury.

The case proceeded to the jury, whereupon Appellant was found guilty of aggravated robbery. At the punishment phase of trial, the jury found that Appellant had previously been convicted of prior felony offenses and assessed his sentence at confinement for 99 years.

Presenting three points of error, Appellant maintains the trial court abused its discretion in (1) excluding testimony of his expert witness; (2) denying his motion to suppress the photograph identification; and (3) denying his motion to suppress the in-court identification.

**Standard of Review**

A trial court's determination of a witness's qualifications as an expert and its decision to exclude expert testimony is reviewed for abuse of discretion. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex.Crim.App. 2006). The trial court's decision to admit or exclude testimony will not be disturbed absent a clear abuse of discretion. *Id*. The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Lyles v. State,* 850 S.W.2d 497, 502 (Tex.Crim.App. 1993). Under this standard, the appellate court must uphold the trial court's ruling if it was

within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(op. on reh'g).

**Expert Testimony on Reliability of Eyewitness Identification**

Under Rule 702 of the Texas Rules of Evidence, the proponent of expert testimony must show by clear and convincing evidence that the evidence he seeks to introduce is sufficiently relevant and reliable to assist the trier of fact in accurately understanding other evidence or in determining a fact issue. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992).

Relevance

The standard for relevance is whether the scientific principles "will assist the trier of fact" and are "sufficiently tied" to the pertinent facts of the case. *Jordan v. State*, 928 S.W.2d 550, 555-56 (Tex.Crim.App. 1996). In this case, the State's case rested solely upon the complainant's eyewitness identification of Appellant. Likewise, Appellant's defense of mistaken identity rested solely upon the jury being able to judge the credibility of this eyewitness testimony. Expert witness testimony pertaining to the reliability of eyewitness identification of a suspect from a photographic lineup was sufficiently tied to the pertinent facts of this case as to be relevant.

Reliability

Courts have wrestled with the application of the reliability component to a proffer of expert testimony pertaining to the reliability of eyewitness identifications. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000), citing *Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Crim.App. 1998), *overruled on other grounds*, *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App. 1999); *Nations v. State,* 944 S.W.2d 795 (Tex.Crim.App. 1997). *See also Jordan*, 928 S.W.2d at 553.

In *Kelly* the Court of Criminal Appeals held that Rule 702 required satisfaction of a three-part reliability test before "novel" scientific evidence would be admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly,* 824 S.W.2d at 573. Factors the trial court might consider in determining whether this reliability component has been met include, but are not limited to: (1) acceptance by the relevant scientific community, (2) qualifications of the proffered expert, (3) literature concerning the technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the technique, (6) the clarity with which the underlying theory or technique can be explained to the court, and (7) the experience and skill of the person applying the technique. *Id.; see also Nenno,* 970 S.W.2d at 560.

In *Nenno* the Court of Criminal Appeals suggested that the *Kelly* framework applies to the soft sciences but with "less rigor" than to the hard sciences.[2] *Nenno,* 970 S.W.2d at 561; *Roberts v. State*, No. AP-75051, 2007 WL 1135647, at *7 (Tex.Crim.App. April 18, 2007)(not yet released for publication). Expert witness testimony in the field of psychology pertaining to the reliability of eyewitness identification of a suspect from a photographic lineup is a "soft science." In the field of "soft sciences," the three-prong *Kelly* test for reliability can be restated as requiring that the proponent of the evidence to show that the (1) field of expertise involved is a legitimate one, (2) subject matter of the expert's testimony is within the scope of that field, and (3) expert's testimony properly relies upon or utilizes the principles involved in that field. *Nenno*, 970 S.W.2d at 561.

**Analysis**

*Was the Testimony of Dr. Wills Admissible?*

During the *Daubert-Kelly* hearing conducted by the trial court, Dr. Wills testified concerning his psychological research and publication of articles in the areas of eyewitness memory and the reliability of eyewitness testimony. He also testified he has been involved in approximately 400 presentations, articles, and papers. He specifically offered testimony

---

[2]"Hard sciences" are generally considered to be those sciences which are based upon scientific method and are susceptible to rigid scientific testing and validation, such as chemistry, physics, or mathematics; whereas, "soft sciences" are generally considered to be those nonscientific disciplines that rely upon technical or specialized knowledge, skill or experience, such as the social sciences of psychology, sociology, or criminology.

on sequential versus simultaneous lineups, as well as the rules and evaluation process involved in preparing a photographic lineup.[3]  For purposes of establishing whether Dr. Wills had relied upon and utilized the appropriate methodology and principles involved in the field of the reliability of eyewitness identifications in photographic lineups, the trial court admitted two exhibits (Defendant's Exhibit No. 2 and Defendant's Exhibit No. 3) in support of his testimony.

Defendant's Exhibit 2 is an article written by the Honorable Pat Priest, Senior District Judge from Bexar County, entitled "*Eyewitness Identification and the Scientific Method*," published in the December 2002 issue of the *Texas Bar Journal.*  According to Judge Priest's article, the scientific method for eyewitness identification is as follows:

- the person conducting the lineup interview should not know which member of the lineup is the suspect;
- the interviewee should be informed that the suspect may or may not be in the lineup and that the interviewer does not know which person is the suspect;
- the suspect must not stand out from the others;
- a clear statement of the witness's level of confidence should be taken immediately after the identification and prior to any feedback;
- the interviewer should conduct a sequential and not a simultaneous lineup; and
- for purposes of *ad hoc* review, the lineup procedure should be videotaped.

---

[3]According to Dr. Wills's testimony, a simultaneous lineup refers to multiple photographs appearing on one page whereas a sequential lineup consists of viewing one photograph at a time and either rejecting or accepting it.

Defendant's Exhibit 3 is a paper presented at the 2004 Advanced Criminal Law Course, sponsored by the State Bar of Texas, entitled "*Restoring Integrity in Eyewitness Cases: Sequential Photo Lineups.*" It includes several appendices, one of which is a paper on photographic lineup procedures prepared by Dr. Wills for the Texas Rangers. Two other articles also included in Exhibit 3 are: (1) "*Eyewitness Accuracy Rates in Sequential and Simultaneous Lineup Presentations: A Meta-Analytic Comparison,*" and (2) "*Best Practice Recommendations for Eyewitness Evidence Procedures: New Ideas for the Oldest Way to Solve a Case.*"

Dr. Wills testified that his paper for the Texas Rangers involved the importance of suspect photos being consistent with one another and with the complainant's description of the suspect. For example, he explained that if the complainant's description included a mole, then a mole would either have to be apparent or unapparent in all photographs in the lineup to reduce the risk of a witness identifying a suspect based solely on the appearance of a mole rather than an actual identification of the suspect.

Based upon his review of the facts in this case, Dr. Wills then offered his opinion that the lineup in question had "some real problems." According to Dr. Wills, the lineup was biased. Specifically, he pointed out that the simultaneous lineup included several photographs that did not sufficiently match the complainant's description of the suspect. Furthermore, he noted that some of the photographs stood out from the others because

9

some included facial hair while others did not, and some included suspects with broad noses while others did not.

Simultaneous with the introduction of Defendant's Exhibit Nos. 2 and 3, the trial court announced that the admission of these exhibits was for the benefit of the review to be conducted by the Court of Appeals. Based on this comment and the time frame reflected by the record, we are persuaded that the trial court did not take the time to actually consider this evidence.[4] Notwithstanding the fact that the trial court may not have considered this evidence, said exhibits were properly before it for purposes of consideration and analysis as to whether Appellant had met his burden pertaining to the admissibility of Dr. Wills's testimony. We must, therefore, review the totality of this evidence to determine whether the trial court's decision to exclude the testimony of Dr. Wills was an abuse of discretion.

Dr. Wills was proffered as an expert witness in the field of psychology. Psychology is a legitimate and recognized field of expertise. *Tiede v. State,* 76 S.W.3d 13, 14 (Tex.Crim.App. 2000). The reliability of eyewitness identification is a legitimate subject matter within the field of psychology. *Weatherred v. State,* 963 S.W.2d 115, 122-31 (Tex.App.–Beaumont 1998), *rev'd. on other grounds*, 15 S.W.3d 540 (Tex.Crim.App.

---

[4]While the record of proceedings is ultimately for the benefit of appellate review, a trial court is duty-bound to consider evidence proffered for purposes of a *Daubert-Kelly* analysis and it may not shirk that duty by simply deferring to the appellate court to do that which it had the obligation to do in the first place.

10

2000). Dr. Wills's testimony, in particular his opinion that the photographic lineup in question was biased, relies upon and utilizes the principles involved in that field. In preparation for his testimony, Dr. Wills reviewed the statement given to the police by Maria Moreno. He also reviewed the probable cause affidavit and the photographic lineup in question. He applied the concept of "relative judgment" to simultaneous photographic lineups and opined the benefits of sequential photographic lineups versus simultaneous photographic lineups. Furthermore, he applied the concepts of "cueing and unintentional behavior" to the process of preparing and presenting non-suggestive photographic lineups.

Having determined that the proffered expert testimony of Dr. Wills was (1) within the legitimate field of psychology, (2) concerning a subject matter within the scope of that field, to-wit: the reliability of eyewitness identifications in photographic lineups; and (3) arrived at after proper utilization of the principles involved in that field, we conclude the proffered expert testimony met the three prong analysis of *Kelly* and *Nenno* and was admissible. Concomitantly, the trial court abused its discretion in excluding that testimony.

*Was the Appellant Harmed by the Exclusion of the Expert Testimony?*

In *Cain v. State,* 947 S.W. 2d 262 (Tex.Crim.App. 1997), the Court of Criminal Appeals held that except for certain federal constitutional errors deemed structural by the United States Supreme Court, no error is categorically immune from a harm analysis. *See also Wheat v. State,* 178 S.W.3d 832, 833 (Tex.Crim.App. 2005). Although a trial court's decision to exclude defensive evidence can substantially affect the rights of the accused,

11

erroneous evidentiary rulings rarely rise to the level of denying an accused the fundamental constitutional right to present a meaningful defense. *Teide v. State,* 76 S.W.3d 13, 14 (Tex.Crim.App. 2002); *Poiter v. State,* 68 S.W.3d 657, 663 (Tex.Crim.App. 2002). As explained in *Poiter,* there are, however, two distinct types of evidentiary rulings which potentially rise to the level of a constitutional violation: (1) state evidentiary rulings which categorically and arbitrarily prohibit an accused from offering otherwise relevant, reliable evidence which is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Poiter, 68 S.W.2d* at 665.

Therefore, when a trial court excludes relevant, reliable evidence which forms such a vital portion of the case that the accused is effectively prevented from presenting a meaningful defense, the appellate court must reverse the judgment of the trial court unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or to the punishment assessed. Tex. R. App. P. 44.2(a).

Having determined that the trial court erred in excluding the testimony of Dr. Wills, we must assess whether that testimony was vital to Appellant's presentation of a meaningful defense. In this regard, we start with the observation that the accuracy and reliability of the complainant's identification of Appellant as the perpetrator of this crime was pivotal to the State's case. The State presented no other inculpatory evidence tying

12

Appellant to the crime for which he was convicted. Likewise, Appellant's defense of mistaken identity turns on the ability of the jury to judge the reliability of that very same testimony. Therefore, we conclude that the reliability of the eyewitness identification was a vital aspect of the case at bar.

Although the proffer of expert testimony on eyewitness identification has increased, it remains controversial. *Weatherred*, 15 S.W.3d at 541 n.2. Courts from all levels, psychologists, and commentators have accepted the premise that the "identification of strangers is proverbially untrustworthy." *United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed. 2d 1149 (1967); *U.S. v. Brownlee,* 454 F.3d 131, 141 (3rd Cir. 2006); *Cook v. State,* 741 S.W.2d 928, 952 (Tex.Crim.App. 1987)(Clinton J., dissenting). The hazards of eyewitness identifications are established by a formidable number of instances of misidentification in the records of American criminal jurisprudence.[5] Making the situation even more problematic is the fact that "jurors seldom enter a courtroom with the knowledge that eyewitness identifications are unreliable."[6] Given these vagaries, a defendant's ability to effectively challenge the certainty and confidence of an eyewitness identification is a matter of paramount importance to the fair administration of justice.

---

[5]Samuel R. Gross *et al., Exonerations in the United States: 1989 - 2003*, 95 J.Crim.L & Criminology 523 (2004); 3 Wigmore, Evidence § 786a (3d ed. 1940).

[6]Rudolf Koch, Note, *Process v. Coutcome: The Proper Role of Corroborative Evidence in Due Process Analysis of Eyewitness Identification Testimony*, 88 Cornell L. Rev. 1097, 1099 n.7 (2003)

Under the facts of this case, the trial court's decision to exclude the testimony of Dr. Wills significantly impaired Appellant's ability to present his defense and was, therefore, of constitutional proportions. In light of these considerations, we cannot determine beyond a reasonable doubt that the error did not contribute to the conviction.

**Conclusion**

Having determined that Appellant was harmed by the exclusion of Dr. Wills's testimony, we sustain point one. Although Appellant addresses the denial of his motion to suppress in points two and three, he neither argues nor references any authority in support of those contentions. Accordingly, he presents nothing for review as to points two and three. Tex. R. App. P. 38.1(h). *See also Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App. 2000).

Consequently, having sustained Appellant's first point of error, the judgment of the trial court is reversed and this cause is remanded for a new trial.


Patrick A. Pirtle
Justice


Publish.

14