

# IN THE
## TENTH COURT OF APPEALS

### No. 10-09-00387-CR

**AARON ZANE SOMERS,**

                                                 **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                 **Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 08-00910-CRF-272

## O P I N I O N

Aaron Zane Somers was convicted of intoxication manslaughter. *See* TEX. PENAL CODE ANN. 49.08 (Vernon Supp. 2010). The jury assessed his punishment at twelve years in prison and a fine of $8,000. We affirm.

### BACKGROUND FACTS

As social chairman for his fraternity, Somers planned a "jungle theme" party. The police responded to a noise complaint at the fraternity house at 11:45 p.m. on the night of the party. Somers spoke to the police and informed the officers that he was in charge and to direct any further complaints to him. Police determined that Somers was

slightly intoxicated at that time, but did not detain or question him. Police returned to the fraternity house at 2:00 a.m. again in response to a noise complaint. At that time, Somers agreed to shut down the band. The police found Somers to be more intoxicated than at the previous encounter. Police returned at 2:30 a.m. to end the party, but did not see or speak to Somers at that time.

A police officer who responded to the noise complaint at the fraternity house was later called to the scene of a major accident at 3:24 a.m. The officer recognized Somers at the scene. Somers was still wearing his costume from the fraternity party. Somers told the officer that he was not driving the overturned pickup, but he did not know how he got on the highway. The pickup was registered to Somers's mother. Based upon witnesses and evidence at the scene, the officer believed Somers was driving the pickup at the time of the accident. The officer performed field sobriety tests on Somers and then placed him under arrest for driving while intoxicated.

Michelle Briggs was the sole occupant of the vehicle struck by Somers's pickup. She was taken by ambulance to the hospital where she later died.

## DRUG USE

Somers brings three issues on appeal relating to the drug use of the victim, Michelle Briggs. The trial court held a hearing during trial on the admissibility of Michelle's drug use. Somers sought to admit evidence of Michelle's positive drug test, statements Michelle made three days before the accident, and crack pipes found in Michelle's purse at the scene of the accident.

**Drug Test Evidence**

Somers first argues that the State misled the trial court and trial counsel by the Department of Public Safety withholding the true results of Michelle's drug tests. The DPS crime lab performed drug analysis of Michelle's blood. DPS performed an enzyme-multiplied immunoassay technique, which is a screening test for classes of drugs. DPS tested Michelle's blood for six different classes of drugs with the EMIT test. The test was positive for benzoylecgonine, called cocaine and its metabolites class. It was also positive for the amphetamine class. EMIT test results are used as a screening device and are not reliable without a confirmation test.

A forensic scientist at DPS testified that she conducted a gas chromatograph test on Michelle's blood as a confirmation test. The test was negative for cocaine and the two metabolites in cocaine. Because the confirmation test was negative, DPS could not testify that there was cocaine present in Michelle's blood. The DPS scientist testified that Michelle's blood sample did not contain the usual preservative. Cocaine breaks down quickly in the blood and the GC test was done almost a year after the EMIT test. The DPS scientist stated that negative confirmation GC test could have been caused by the lack of preservative in the blood sample. However, because the confirmation test was negative, DPS could not report a positive cocaine finding based solely upon the EMIT test. The trial court excluded the EMIT test results.

Somers specifically argues in his first issue on appeal that the State failed to disclose favorable evidence that the GC test was not in conflict with the EMIT test in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. at 87. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceedings would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Prosecutors have a duty to learn of any evidence favorable to the defense that is known to others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Under *Brady*, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Webb v. State*, 232 S.W.3d 109, 115 (Tex. Crim. App. 2007).

Rod McCutcheon, chief toxicologist and medical examiner for Bexar County who also serves as a private consultant, testified on Somers's behalf at the motion for new trial. McCutcheon stated that he reviewed the DPS materials provided relating to Michelle's drug tests results. McCutcheon testified that the DPS analysis shows a small amount of cocaine present in the sample but that it was reported as negative because it was not enough to meet the acceptance criteria to be considered as a positive result. McCutcheon testified that cocaine is easily degraded and needs a preservative. Because the GC test was conducted almost a year after the EMIT test, McCutcheon does not feel the results are inconsistent.

McCutcheon's testimony was based upon DPS material provided to Somers's counsel before trial. McCutcheon testified that although the GC test indicated trace

amounts of cocaine, he would not report it as positive because it did not meet the acceptance criteria.

The record does not support Somers's argument that the State withheld the true results of Michelle's blood tests in violation of *Brady*. The State provided Somers with the DPS analysis prior to trial. There is no dispute that the records provided indicate a trace amount of cocaine. The DPS scientist testified that there was no "analite" present. McCutcheon stated in reference to that testimony "I would like to know what she meant by that. I don't really know if she meant there is not even a trace indicated in the record or there is not a trace that we could report that met the criteria." McCutcheon acknowledged that the trace amount was not enough to be reported as positive. The DPS scientists agreed with McCutcheon's testimony that the failure to properly preserve the blood sample could have contributed to the negative GC test. We do not find that the State withheld material evidence or misled trial counsel and the trial court. We overrule Somers's first issue on appeal.

**Exclusion of Evidence**

Somers next argues that the trial court erred in excluding Michelle's EMIT and GC drug test results and Michelle's statements to her employer. Somers intended to present evidence that Michelle was a habitual cocaine user and likely died from a heart attack prior to the collision. When reviewing a trial court's ruling on the admission of evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id*.

Somers sought to introduce the EMIT and GC test results to show Michelle was using cocaine at the time of the accident. As previously discussed, the EMIT test was positive for cocaine, but the confirmation GC test was negative. EMIT test results are not reliable without a positive confirmation test. The trial court did not abuse its discretion in excluding the test results.

Somers also sought to introduce Michelle's statements to her employer as statements against interest. TEX. R. EVID. 803(24). Three days prior to the accident, Michelle was given a drug test at her place of employment because she appeared "high." The drug test was positive for cocaine, amphetamines, and methamphetamines. Michelle stated "whatever" when told she was being terminated due to the positive drug test.

A statement against interest is an exception to the hearsay rule and is:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX. R. EVID. 803(24). Michelle's statement of "whatever" in response to termination for failing a drug test was not an admission of drug use. The trial court did not abuse its discretion in refusing to admit the statement as a statement against interest. We overrule Somers's second and third issues.

## AUTOPSY REPORT

Somers next argues that the trial court erred in admitting the autopsy report through the treating physician at the emergency room rather than the medical examiner who performed the autopsy. The trial court admitted the autopsy report over Somers's objection based upon the Sixth Amendment confrontation clause. Somers also received a running objection "to any references that Dr. Alford may make to the autopsy." Somers claims that the autopsy report is the only evidence that conclusively states that Michelle died of blunt force injuries and that he was unable to cross-examine the medical examiner who prepared the report in violation of *Crawford v. Washington*, 541 U.S. 36 (2004).

Dr. Richard D. Alford testified that he treated Michelle at the emergency room and that she had air and blood in her chest as a result of blunt trauma. Michelle also had a tear in her liver from blunt force injury. Dr. Alford further testified that a CAT scan of Michelle's brain revealed that she suffered a severe head injury and possible spinal cord injury. Dr. Alford testified without objection that her cause of death was multiple trauma, head injury, and spinal cord injury.

Any error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). Somers objected to the admission of the autopsy report and to any reference to the autopsy. Dr. Alford testified to the cause of death as her treating physician without reference to the autopsy report. We overrule the fourth issue.

## IDENTITY OF THE DRIVER

Somers next argues that he received ineffective assistance of counsel because his trial counsel failed to adequately investigate the possibility that someone other than Somers was driving the vehicle that struck Michelle. Somers also argues that the possibility of another driver is newly discovered evidence which would bring about a different result.

**Facts**

William Duvall was a passenger in a pickup traveling near the scene of the accident. Duvall observed a pickup behind him swerving. After the pickup he was in turned, Duvall heard a crash. They turned around and went to the scene, arriving 30 to 60 seconds after hearing the collision. Duvall saw appellant on his knees near the overturned pickup.

Duvall gave a statement to police that was provided to trial counsel prior to trial. Trial counsel had a member of his staff prepare a transcript of the interview. Trial counsel also had an investigator interview Duvall and that interview was also transcribed.

Somers's trial counsel testified at the motion for new trial that he mistakenly believed Duvall said that a person approached the scene on foot and told Somers not to say anything to police. After reviewing the State's transcripts, trial counsel now understands the person approached on foot and told Duvall not to call the police or speak to police. Somers argues that that person could have been the driver of the pickup that struck Michelle.

**Ineffective Assistance of Counsel**

To determine if trial counsel rendered ineffective assistance, we must first determine whether Somers has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Somers must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Somers's trial counsel reviewed Duvall's interviews prior to trial. Trial counsel questioned Duvall at trial whether he told police there might have been another driver. Duvall consistently stated that he did not see anyone flee the scene of the accident and that he saw appellant crawling out of the overturned pickup. Somers has not shown that his trial counsel was ineffective in failing to investigate the possibility of another driver.

**Newly Discovered Evidence**

To obtain a new trial upon newly discovered evidence, the following elements are required: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the movant's failure to discover the evidence was not due to his want of

diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).

The State provided Somers with a copy of Duvall's statement prior to trial and Somers's investigator interviewed Duvall. Somers's trial counsel reviewed these statements prior to trial. The evidence was available to Somers at the time of trial. We overrule the fifth and sixth issues.

**ARGUMENT ON PUNISHMENT**

Somers contends that the State made an improper argument during the punishment phase concerning application of the parole law. Somers further complains that the trial court abused its discretion when it quashed subpoenas and declined to consider the juror's affidavits discussing the effect of the State's argument.

**Argument**

During his argument on punishment, Somers's trial counsel explained the effect of parole laws on the sentence and detailing when Somers would be eligible for parole. The State then responded without objection that Somers faced a maximum sentence of 20 years and that he would be eligible for parole in 10 years. The State noted that Somers might not receive parole at that time. The State later argued that

> Now on these facts, with his history, you would certainly be within your rights to go back in this jury room and return the maximum sentence. That is a lot of time. He'll do ten years of that. He'll be a young man when he gets out.

Somers objected that it was unknown if he would receive parole at that time.  The trial court overruled the objection.

Error results from improper jury argument only if, examined in light of the entire record, the argument is extreme, is manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision.  *Brantley v. State*, 48 S.W.3d 318, 330 (Tex. App.—Waco 2001, pet. den'd); *Kelly v. State*, 18 S.W.3d 239, 244 (Tex. App.—Amarillo 2000, no pet.).  The State initially correctly stated that Somers would be eligible for parole after serving half of his sentence, but that he might not receive parole at that time.  The argument was not extreme or manifestly improper, and we find no reversible error.

**Juror Subpoenas**

A defendant must be granted a new trial when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial.  TEX. R. APP. P. 21.3(g).  The Rules of Evidence provide:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment.  Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.  However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b).  If a defendant seeks to show jury misconduct under TEX. R. APP. P. 21.3(g) by juror testimony or affidavit, Rule 606(b) requires that the testimony illustrate

either the existence of an outside influence or a rebuttal of a claim that a juror was not qualified. *See Hart v. State*, 15 S.W.3d 117, 124 (Tex. App.—Texarkana 2000, pet. den'd). Somers intended to show through the affidavits and juror testimony the effect the State's argument had on the application of the parole laws during their deliberations. Jury deliberations considering the effects of parole are not an outside influence and any testimony or affidavit is not admissible under Rule 606(b). *See Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, no pet.). The trial court did not err in quashing the jurors's subpoenas. We overrule the seventh and eighth issues.

## BLOOD ALCOHOL EVIDENCE

Somers brings three issues on appeal challenging the trial court's admission of his blood alcohol evidence in violation of the United States Constitution, the Texas Constitution, and Texas Code of Criminal Procedure. Somers filed a motion to suppress the evidence, and the trial court held a hearing on the motion. We have previously set out the standard of review for a motion to suppress, and we will use that standard, with additional law specific to Somers's issue, to determine whether the trial court erred. *See Brown v. State*, 115 S.W.3d 633, 635-37 (Tex. App.—Waco 2003, no pet.).

A peace officer shall require the taking of a specimen of a person's breath or blood if the officer arrests the person for an offense under Chapter 49 of the Penal Code involving the operation of a motor vehicle and the person refuses the officer's request to submit to the taking of the specimen voluntarily. TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon Pamph. Supp. 2010). Section 724.012(b) further requires, in pertinent part, that the person was the operator of a motor vehicle in an accident that the officer reasonably

believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident any individual has died or will die.

Officer Richard Benton Keough testified at the hearing on Somers's motion to suppress. Officer Keough placed Somers under arrest for driving while intoxicated after conducting field sobriety tests and observing Somers. Somers refused consent to provide a blood specimen, and Officer Keough obtained the sample pursuant to TEX. TRANSP. CODE ANN § 724.012(b) (Vernon Pamph. Supp. 2010). Somers had a blood alcohol level of .30.

Somers does not dispute Officer Keough's determination that he was intoxicated, nor does he dispute that Officer Keough reasonably believed Michelle would die as a result of the accident. Somers contends that because there is no evidence that he operated the motor vehicle, there was no probable cause for his arrest and the officer did not have authority to take his blood without consent.

Officer Keough spoke with Duvall at the scene, and Duvall informed him that he had witnessed Somers crawling out of the pickup involved in the accident. Duvall stated that he did not see anyone else get out of the pickup. Officer Keough observed bruising injuries on Somers's left shoulder consistent with the driver's side seatbelt. Somers told Officer Keough that he was not driving the pickup involved in the accident and that he did not know if it was his pickup. Officer Keough confirmed that the pickup belonged to Somers's mother.

Officer Keough had probable cause to believe that Somers was driving the vehicle and committed the offense of driving while intoxicated. Officer Keough was authorized to take Somers's blood specimen pursuant to TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon Pamph. Supp. 2010). The trial court did not err in denying Somers's motion to suppress and in admitting the blood alcohol evidence. We overrule issues nine, ten, and eleven.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Somers argues in two issues that he received ineffective assistance of counsel because his trial counsel failed to move for a directed verdict at the close of the State's case. We have previously set out the standard of review for ineffective assistance of counsel.

A motion for a directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 2007). In reviewing the legal sufficiency of the evidence, we look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008).

Somers first argues that there was no evidence that he was driving the vehicle that struck Michelle's vehicle. As discussed in the previous issues, we find that Officer Keough had probable cause to believe Somers was driving the vehicle. There was additional evidence to support the finding that Somers was driving. Somers was not wearing a shirt at the time of the accident, and he had red paint on his chest and back as

part of his costume for the jungle party. The red paint on Somers's back was smeared. The pickup had red paint on the driver's side seat. There was no red paint other than on the driver's side of the pickup. The record shows that the driver's side air bag was activated, but not the passenger side air bag.

One witness at the scene observed Somers come from the driver's side of the pickup. Duvall saw Somers crawl from the pickup after the accident. Neither witness saw anyone else exit the pickup or flee from the scene. The evidence is sufficient to show that Somers was driving the vehicle.

Somers next argues that the evidence was legally insufficient to prove that Somers caused the death of Michelle. Michelle's vehicle was stopped on the side of the road with the headlights on and the flashers activated. The car was in drive at the time of the accident, but not moving. Michelle's vehicle was on the shoulder of the road, approximately six inches into the roadway. The pickup was "straddling" the line and was two and one half to three feet onto the shoulder at the time of the collision. The pickup was driving approximately sixty miles per hour at impact.

Somers contends that Michelle died before the accident occurred. Dr. Alford detailed the injuries Michelle received as a result of the collision and testified that Michelle's cause of death was multiple trauma, head injury, and spinal cord injury.

The record before us does not support Somers's argument that his trial counsel was ineffective in failing to move for a directed verdict. We overrule the twelfth and thirteenth issues.

## CONCLUSION

We affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
       Justice Reyna, and
       Justice Davis
       (Justice Reyna dissenting)
Affirmed
Opinion delivered and filed November 24, 2010
Publish
[CR25]