

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00488-CR
### NO. 02-12-00489-CR

DAVID VERNON DEES                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two points, Appellant David Vernon Dees appeals his convictions for assault, unlawful restraint, and sexual assault. We affirm.

### II. Factual and Procedural Background

On the morning of August 30, 2011, the Crowley Police Department received a call from the complainant, who told the emergency operator that Dees

---

[1]*See* Tex. R. App. P. 47.4.

had tied her up, handcuffed her, and raped her. The complainant also told the operator that Dees had a gun and that he had threatened to shoot them both if the police came.

Officer Gary Mosely and two additional Crowley police officers responded to the emergency call and set up a perimeter around the residence. Officer Mosely called Dees's cellphone and asked him to meet the officers outside. Dees quickly exited the house and was taken into custody and placed in Officer Mosely's squad car. The other officers searched the inside of the house and found, among other things, broken zip ties, wads of duct tape, and a pair of handcuffs.

Dees was detained during the investigation and told Officer Mosely that after he had engaged in consensual sex with the complainant, she had pulled out a gun and had started acting crazy. Dees said that he had wrestled the gun away from her and "handcuffed her and sat on her for approximately [thirty] minutes until she calmed down." The officers formally arrested Dees after completing their search of the house.

Dees filed a motion to suppress the statements he had made to Officer Mosely. In his motion, Dees argued that the statements were inadmissible because he was not given his *Miranda* warnings before Officer Mosely began to question him. The trial court denied the motion after finding that the statements were not the result of custodial interrogation.

2

The trial court conducted three in camera hearings to determine whether evidence of the complainant's past sexual behavior was admissible under rule of evidence 412. The trial court ultimately found that the evidence was inadmissible and precluded Dees from questioning the complainant about the matters she testified about in those hearings.

During the trial, the complainant testified that Dees had tied her up with zip ties, duct-taped her eyes and mouth, raped her, handcuffed her to a table, and threatened to kill her and sink her body in a lake. She also testified that at some point during the incident, she ran outside screaming for help, but Dees chased her and pulled her back inside. The trial court admitted into evidence various pictures depicting broken zip ties, a pair of handcuffs, and other items of physical evidence that the police found. The jury also heard a 9-1-1 call made by a neighbor, who testified that she had heard a woman running and screaming on the morning of the incident.

At the conclusion of the six-day trial, the jury found Dees not guilty of two counts of aggravated sexual assault and guilty of two counts of sexual assault, one count of assault causing bodily injury, and one count of unlawful restraint.[2] The jury assessed punishment at one year's confinement for each of the assault and unlawful restraint convictions and four years' confinement on each of the

---

[2]The jury charge also contained a special issue under count two—the unlawful restraint offense—relating to a deadly weapon finding. The jury did not find that Dees used or exhibited a deadly weapon during the commission of the unlawful restraint offense.

sexual assault convictions.[3]   The trial court sentenced Dees accordingly.   This appeal followed.

### III.  Motion to Suppress

In his first point, Dees argues that the trial court abused its discretion by denying his motion to suppress.   Specifically, Dees argues that his statements were inadmissible under code of criminal procedure articles 38.22 and 38.23 because they were made during the course of custodial interrogation, he was not properly Mirandized, and the officers failed to record his oral statements.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.   *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review.   *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).   The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.   *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).   Therefore, we give almost total deference to the trial court's rulings on

---

[3]The punishment range listed in the jury's charge for the sexual assault convictions was a minimum of two years and a maximum of twenty years.

4

(1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

## B. Applicable Law

The need for *Miranda* warnings arises when a person is subjected to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Article 38.22 of the code of criminal procedure generally precludes

5

the use of statements that result from custodial interrogation absent compliance with its procedural safeguards.  Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005 & Supp. 2013).

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612.  A person held for an investigative detention is not in custody.  *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.).  A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.  *Dowthitt*, 931 S.W.2d at 255; *Campbell*, 325 S.W.3d at 233.

There are at least four general situations when a suspect's detention may constitute custody:  (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.  *Dowthitt*, 931 S.W.2d at 255; *McCulley v. State*, 352 S.W.3d 107, 115–16 (Tex. App.—Fort Worth 2011, pet. ref'd).  In the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to

6

an investigative detention. *McCulley*, 352 S.W.3d at 116. Concerning the fourth situation, the officers' knowledge of probable cause must be manifested to the subject, and such manifestation could occur if information sustaining probable cause is related by the officers to the suspect or by the suspect to the officers. *Id.* Additionally, the length of time involved is an important factor to consider in determining whether a custodial interrogation occurred. *Id.*

## C. Suppression Hearing

Officer Mosely, the sole witness at the suppression hearing, testified that he and two other officers responded to a dispatch concerning an armed hostage situation. After Officer Mosely arrived, he spoke with Dees by phone, asking him to meet the officers outside. Officer Mosely testified that after Dees exited the house, the police handcuffed him and placed him in Officer Mosely's patrol car so that the other officers could search inside the house.

Dees remained handcuffed in the patrol car for approximately five or ten minutes before Officer Mosely removed the handcuffs. Officer Mosely informed Dees that he was not under arrest but that he was being detained while the officers completed their investigation.

While sitting in the backseat of the patrol car with the door open, Dees told Officer Mosely that he had engaged in consensual sex with the complainant, that she had pulled a gun, and that he had handcuffed her and sat on top of her for thirty minutes after wrestling the gun away from her. Officer Mosely testified that approximately ten minutes later, Officer Minton informed him that the

7

complainant's version of events matched the physical evidence found inside the residence, and the officers formally arrested Dees.

After hearing Officer Mosely's testimony and the arguments of counsel, the trial court issued the following findings of fact and conclusions of law:

> [T]he Court will find that on the morning in question the officers had received information from dispatch that there was an alleged sexual assault. The perpetrator had a gun and had used handcuffs.
>
> The officers responded to the address . . . . There was cell phone communication made between the officer and Mr. Dees. Mr. Dees was told to come outside, which he complied with very quickly. Upon coming outside, he was ordered to the ground. He complied. He was handcuffed and placed in the officer's squad car with the door closed. The door remained closed for a few moments while the other two officers went inside. Upon learning that the house was clear, the door of the car was opened, the handcuffs were removed from Mr. Dees, and there was a conversation that occurred between . . . Officer Mosely and Mr. Dees whereas Officer Mosely was, basically, informing Mr. Dees of why they were out there, trying to find out what was going on, and that Mr. Dees made the statements regarding the consensual sex and the use of the handcuffs and the firearm.
>
> This occurred after Mr. Dees asked, am I under arrest, and Officer Mosely said, no, you are not. It was a detention rather than an arrest. And that at various times after these conversations – after this statement was made, Mr. Dees may have been put back in the car with the door closed or may have been left there with the door open.
>
> But it was not until Officer Mosely and Officer Minton compared stories, for lack of a better term, from the Defendant and [the complainant], that the decision was made to arrest Mr. Dees at that time. And that's when he was re-handcuffed and placed back in the patrol car with the door closed.
>
> The Court finds that this statement regarding the alleged events in the house are not the result of custodial interrogation under 38.22

8

and will allow the – that portion of his statements to be exhibited or given to the jury.

Both sides – so your objection is overruled.

## D. Analysis

Although Dees contends that his statements were made while he was in custody and, thus, that *Miranda* warnings were required, the trial court found that the statements did not result from custodial interrogation and were therefore admissible. Here, the record reflects that Dees was not detained for an unreasonable amount of time when his detention, which lasted twenty to forty-five minutes, provided officers with reasonable time to secure the scene and complete their investigation. *See Kothe v. State*, 152 S.W.3d 54, 64–65 (Tex. Crim. App. 2004) (stating that scope of investigative detention is reasonable if it lasts not longer than necessary to effectuate purpose of detention); *see also Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.) (holding that twenty-seven minute delay while original investigating officer waited on another officer to finish the investigation was reasonable).

Additionally, that Dees was handcuffed for a ten-minute period of time did not transform the investigative detention into an arrest.[4] *See State v. Sheppard*,

---

[4]The need to initially place Dees in handcuffs was bolstered by the fact that the officers were responding to a dispatch that informed them that there was a man with a gun threatening to kill a woman and the police. *See Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997) (holding that officer's handcuffing of two men was reasonable and did not transform investigative detention into arrest when officers responded to report of a burglary in progress and found two men at the address in question and officer testified that he did this

9

271 S.W.3d 281, 283 (Tex. Crim. App. 2008) ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'"); *Campbell*, 325 S.W.3d at 234 (explaining that there is no bright-line rule that handcuffing a suspect always constitutes an arrest). And although Dees was not free to leave the scene until the officers concluded their investigation, Officer Mosely specifically informed Dees that he was not under arrest. *See Dowthitt*, 931 S.W.2d at 255 (stating that custody requires restriction of movement amounting to degree associated with arrest as opposed to investigative detention).

Further, Officer Mosely remained outside during the investigation and was not aware of the evidence found inside until Dees was formally arrested. *See Dowthitt*, 931 S.W.2d at 255 (stating that an officer's knowledge of probable cause is only relevant when manifested to the subject); *McCulley*, 352 S.W.3d at 116. Accordingly, because the record supports the trial court's finding that Dees's statements were not the result of custodial interrogation under article 38.22, we hold that the trial court did not err by denying the motion to suppress.[5] *See Kelly*, 204 S.W.3d at 818–19. Therefore, we overrule Dees's first point.

for his own protection "[d]ue to the nature of the call"); *Akins v. State*, 202 S.W.3d 879, 886 (Tex. App.—Fort Worth 2006, pet. ref'd) (stating that handcuffing a suspect during an investigative detention may be proper when necessary to maintain officer safety or to thwart the suspect's attempt to frustrate further inquiry).

[5]Because we conclude that the statements were not the result of custodial interrogation, the fact that they were not recorded and that they were made prior

10

## IV. Rule 412 Evidence

In his second point, Dees argues that the trial court violated his confrontation rights under the Sixth Amendment by excluding evidence of the complainant's past sexual behavior and prior inconsistent statements and that the evidence was admissible under rule of evidence 412(b)(2)(E).

## A. Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). The right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.  *Allen v. State*, 700 S.W.2d 924, 929, 931 (Tex. Crim. App. 1985) (holding that precursor to rule 412 was constitutional and did not, on its face, violate accused's right to confrontation); *see also Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046 (1973).  Moreover, the federal constitution requires only the introduction of evidence that is otherwise relevant and admissible.  *See United States v. Nixon*, 418 U.S. 683, 711, 94 S. Ct. 3090, 3109

---

to reading Dees his *Miranda* rights is irrelevant.  *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612.  Having thus determined that the statements were not obtained in violation of the Constitution or state or federal law, we need not address Dees's article 38.23 objection.  *See* Tex. R. App. P. 47.1.

(1974); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.) (explaining that a trial court "maintains broad discretion to impose reasonable limits on cross-examination to avoid, *inter alia*, harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence"), *cert. denied*, 552 U.S. 917 (1997).

Texas Rule of Evidence 412, known as the "rape shield law," governs the admissibility of a complainant's prior sexual relationships with third parties in a sexual assault case. *See* Tex. R. Evid. 412. Rule 412(b) provides that specific instances of a victim's past sexual conduct are inadmissible unless (1) the evidence falls within one of five categories of evidence listed in rule 412(b)(2), and (2) the trial court finds that the evidence's probative value outweighs the danger of unfair prejudice. Tex. R. Evid. 412(b). Even if the evidence falls within one of the enumerated categories of rule 412(b)(2), the court must further find that the probative value of the evidence outweighs the danger of unfair prejudice. *See Holloway v. State*, 751 S.W.2d 866, 866–70 (Tex. Crim. App. 1988); *Stephens v. State*, 978 S.W.2d 728, 732 (Tex. App.—Austin 1998, pet. ref'd). Dees complains that the excluded testimony was admissible under rule 412(b)(2)(E) because the evidence was constitutionally required under the Confrontation Clause to show possible biases or motives of the complainant's testimony. *See* Tex. R. Evid. 412(b)(2)(E).

Rule 412 is designed to limit abusive, embarrassing, and irrelevant inquiries into a complainant's private life and to encourage victims of sexual

12

assault to report those crimes. *See Allen*, 700 S.W.2d at 929; *Wofford v. State*, 903 S.W.2d 796, 798 (Tex. App.—Dallas 1995, pet. ref'd). The rationale behind rule 412 is that evidence of a complainant's

> prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of these statutes assert that they encourage victims of sexual assault to report the crimes without fear of having their past sexual history exposed to the public.

*Allen*, 700 S.W.2d at 929 (quoting *Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir. 1982)).

## B.  Rule 412 Hearings

Because the in camera records are sealed, and because we ordered the briefs in this case sealed, we will not discuss the details of the evidentiary matters of which Dees complains except to note that some of the testimony at the Rule 412 hearings shows that the complainant had possible motives for bias in her testimony against Dees and that she lied and made inconsistent statements in the past about matters discussed at those hearings. Accordingly, we need not address those details as we have reviewed and considered the appellate record in its entirety and determine that Dees was not harmed by the exclusion of the evidence about which he complains.

## C.  Harmless Error

Assuming without deciding that the trial court abused its discretion by excluding the complained-of evidence, we will review its actions for harm to

determine whether the errors call for reversal of the judgment.  Tex. R. App. P. 44.2.  Here, the assumed error is constitutional because it concerns Dees's confrontation rights under the Sixth Amendment of the United States Constitution.[6]  Therefore, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment.[7]  Tex. R. App. P. 44.2(a); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

The United States Supreme Court has established the appropriate three-prong analysis for determining whether a denial of the Sixth Amendment Confrontation Clause right of cross-examination is harmless error.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986).  Initially, under the first prong, we must assume that the damaging potential of the cross-examination was fully realized.  *Id.*, 106 S. Ct. at 1438; *Shelby v. State*, 819 S.W.2d 544, 550–51 (Tex. Crim. App. 1991).  Under the second prong, we then must perform our review under these factors:  (1) whether the witness's

---

[6]Because we hold that Dees was not harmed under the strictest harm analysis conducted for constitutional error under rule 44.2(a), we need not conduct a less intensive nonconstitutional harm analysis for the trial court's assumed error in excluding the complained-of evidence. *See* Tex. R. App. P. 47.1.

[7]Dees does not challenge his sentences except to note that his relatively light sentences "reflect a degree of doubt concerning [his] guilt, despite the Rules of Evidence being used to tilt the jurisprudential scale in [the complainant's] favor, by giving the jury less than the entire story."

14

testimony was important to the prosecution's case; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the testimony of the witness on material points; (4) whether and to what extent cross-examination was otherwise permitted; and (5) whether the prosecution's case was strong. *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547; *Curry v. State*, 861 S.W.2d 479, 482–83 (Tex. App.—Fort Worth 1993, pet. ref'd). Finally, keeping the first two prongs in mind, we determine whether the error was harmless beyond a reasonable doubt. Tex. R. App. 44.2(a); *Shelby*, 819 S.W.2d at 547.

**D. Analysis**

Regarding the first factor—the importance of the complainant's testimony to the prosecution's case—Dees argues that because sexual assault cases frequently require the jury to reach a verdict based solely upon two diametrically opposing versions of an event, the State's entire case "turned on whether or not the jury found [the complainant] to be believable." While most sexual assault cases involve the prototypical "swearing match" between the complainant and defendant, this case does not fit within that same mold. *Cf. Billodeau v. State*, 277 S.W.3d 34, 42 (Tex. Crim. App. 2009) ("In many sexual-assault cases, the only evidence linking the accused to the offense is the complainant's accusations."); *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (recognizing that in prosecutions for sexual offenses, a successful conviction "'often depend[s] primarily on whether the jury believe[s] the complainant, turning

15

the trial into a swearing match between the complainant and defendant'" (citation omitted)).

After reviewing the record and in light of the physical and testimonial evidence presented by the State that corroborated the complainant's testimony, we cannot agree that the "entire case turned on whether or not the jury found [the complainant] to be believable." *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547.

Regarding the second factor—whether the testimony was cumulative—the record reveals that although the excluded evidence might have had some impact on the complainant's overall credibility, it was also cumulative and had great potential to inflame the jury and distract it from its responsibility as the impartial factfinder. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Hammer v. State*, 296 S.W.3d 555, 564 (Tex. Crim. App. 2009) ("A sexual assault complainant is not a volunteer for an exercise in character assassination."); *Stein v. State*, 492 S.W.2d 548, 551 (Tex. Crim. App. 1973) ("[We] reassert the critical importance of convicting an accused only upon that evidence presented, without attempting to inflame or prejudice the minds of the jurors.").

A review of the third factor—whether there was evidence corroborating or contradicting the testimony of the witness on material points—demonstrates that the record is replete with both physical and testimonial evidence that corroborated the complainant's version of the assault. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547. Moreover, the only

16

testimony contradicting the complainant's version of events was Dees's own statements made to Officer Mosely on the morning of the assault.

Regarding the fourth factor—whether cross-examination was otherwise permitted—after a thorough review of the entire record, we conclude that Dees had ample opportunity to cross-examine the complainant and present his defensive theory to the jury. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547.

Regarding the fifth factor—the strength of the prosecution's case—we conclude that the State presented a strong case against Dees based on the amount of physical and testimonial evidence that corroborated the complainant's testimony. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547.

Finally, after assuming that the damaging potential of the cross-examination was fully realized, reviewing the factors discussed above, and keeping in mind both the damaging potential and the five factors, we look to whether the trial court's error, if any, in prohibiting cross-examination of the complainant regarding the matters discussed during the Rule 412 hearings was harmless beyond a reasonable doubt. *See Shelby*, 819 S.W.2d at 547 (citing *Van Arsdall*, 475 U.S. at 684). Despite the limitations placed on Dees's cross-examination of the complainant, the record reflects that the jury was cognizant of her purported motive or bias, which Dees's counsel emphasized in his closing argument.

17

In addition, the complainant's credibility was called into question when Dees's counsel vigorously cross-examined her, causing her to admit to lapses of memory and to try to explain contradicting portions of her testimony. And although the complainant's testimony was undoubtedly important to the State's case, the record indicates that the State also relied on other testimony and physical evidence to establish its case. *See Reed v. State*, No. 02-02-00055-CR, 2003 WL 1894581, at *7 (Tex. App.—Fort Worth Apr. 17, 2003, pet ref'd) (op. on reh'g) (not designated for publication) ("The story told by the physical evidence in this case is simply so strong that we cannot conclude the jury would have been influenced by . . . testimony concerning the statement Samantha made in the emergency room."). *But cf. Stephenson v. State*, 226 S.W.3d 622, 628 (Tex. App.—Amarillo 2007, no pet.) (holding that when State presented no evidence to connect defendant to crime other than complainant's identification of defendant as perpetrator, wrongful exclusion of defense expert pertaining to reliability of eyewitness identification of suspect was harmful); *Fox v. State*, 115 S.W.3d 550, 564 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding as harmful the exclusion of evidence that supported defense's theory under doctrine of chances when State's case relied solely on complainant's allegation of sexual abuse, inconclusive physical evidence, and weak circumstantial evidence).

Accordingly, we conclude that even if Dees should have been allowed to cross-examine the complainant about the matters discussed at the Rule 412 hearings, the alleged error did not contribute to his conviction beyond a

reasonable doubt.[8]  *See* Tex. R. App. P. 44.2(a); *Shelby*, 819 S.W.2d at 547 (citing *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438).  Therefore, we overrule Dees's second point.

## V.  Conclusion

Having overruled both of Dees's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 27, 2013

---

[8]For the same reason, we need not address Dees's complaint that he should have been allowed to cross-examine the complainant regarding DNA evidence.  Moreover, that evidence was irrelevant in light of his statements to police.

19